**STATE v. HENSLEY**

[156 N.C. App. 634 (2003)]

———————————————

STATE OF NORTH CAROLINA v. JAMES MICHAEL HENSLEY, Defendant

No. COA02-520

(Filed 18 March 2003)

**1. False Pretense— obtaining property—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of obtaining property by false pretenses involving a caliper that was pawned by defendant and that belonged to the company where defendant previously worked, because: (1) the evidence at trial was sufficient to establish that the company where defendant worked owned the pawned caliper that was etched on the back with the name of the company and had a serial number corresponding to the company's inventory computer system; and (2) subsequent evidence failed to reconcile how defendant, a delivery driver without access to production equipment, would have legitimate possession of the caliper.

**2. Sentencing— habitual felon—ineffective assistance of counsel—cruel and unusual punishment**

The trial court did not err in an obtaining property by false pretenses case by sentencing defendant as an habitual felon, because: (1) defendant's attack on the use of his 1982 conviction is ineffective as a collateral attack on the prior conviction when his argument does not equate to a failure to appoint counsel, but rather that counsel procured by defendant provided ineffective assistance by failing to appear; (2) reliance on a nineteen-year-old conviction as a predicate for habitual felon status was not unconstitutional infliction of cruel and unusual punishment when the General Assembly enacted provisions limiting the use of older convictions only in certain classes of habitual offense statutes not including N.C.G.S. § 14-7.4; and (3) the sentence imposed in

this case under the habitual felon laws was not so grossly dispro-portionate so as to result in constitutional infirmity.

Appeal by defendant from judgment entered 11 October 2001 by Judge Dennis J. Winner in Buncombe County Superior Court. Heard in the Court of Appeals 30 January 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Joyce S. Rutledge, for the State.*

*Daniel F. Read and Maria J. Mangano, for defendant-appellant.*

CALABRIA, Judge.

James Michael Hensley ("defendant") worked as a driver for Turnamics, Inc. ("Turnamics") from February 2000 until his termi-nation in May 2000. In his employment, defendant delivered items for Turnamics.

When a piece of equipment, a caliper, was located at Westside Pawn ("Westside"), Turnamics filed a report with the Asheville Police Department. The missing caliper, valued at ninety to one hundred dol-lars, was used to measure parts during production. Detective Wally Welch ("Welch") of the Asheville Police Department investigated the caliper pawned on 27 July 2000 at Westside. Etched on the back side of the pawned caliper was a number along with the words "Turnamics, Inc." The pawn ticket, for twenty dollars, was signed by both the defendant and the pawnbroker. Defendant was taken into custody at the Asheville Police Department. After Welch read defend-ant his Miranda rights, defendant stated he understood those rights and signed a waiver of rights. Thereafter, defendant gave a written statement concerning the caliper and was later arrested.

Defendant was indicted by a grand jury in Buncombe County on 6 August 2001 for embezzlement, two counts of obtaining property by false pretenses involving knives, one count of obtaining property by false pretenses involving a caliper, and larceny by an employee. All five charges were consolidated for trial, and defendant pled not guilty. Defendant was also separately charged as a habitual felon.

This case came to trial in the Superior Court of Buncombe County on 10 October 2001, the Honorable Dennis J. Winner presiding. At the close of the State's case, the trial court granted defendant's motion to dismiss the charges of embezzlement and larceny by an employee. The trial court also dismissed both counts of obtaining

property by false pretenses involving knives due to defects in the indictments.

On 11 October 2001, in bifurcated trials, the jury found defendant guilty of obtaining property by false pretenses in violation of N.C. Gen. Stat. § 14-100 (2001) and guilty of the status of habitual felon in violation of N.C. Gen. Stat. § 14-7.1 (2001). Defendant received a sentence of 90 to 117 months. Defendant appeals.

Defendant asserts the trial court erred by (I) denying the motion to dismiss and (II) sentencing defendant to 90 to 117 months imprisonment as a habitual felon.

I. Motion to Dismiss

**[1]** Defendant first asserts the trial court erred in denying the motion to dismiss because the evidence was insufficient to support the conviction of obtaining property by false pretenses. Defendant contends no witness was able to identify the caliper as the property of Turnamics, therefore a required element of the charge has not been proved.

"A motion to dismiss on the ground of sufficiency of the evidence raises . . . the issue 'whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.' " *State v. Barden*, 356 N.C. 316, 351, 572 S.E.2d 108, 131 (2002) (quoting *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996)). "The existence of substantial evidence is a question of law for the trial court, which must determine whether there is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991)). "The court must consider the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from that evidence." *State v. Lucas*, 353 N.C. 568, 581, 548 S.E.2d 712, 721 (2001). Evidence may be direct, circumstantial, or both. *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988).

The elements of the crime of obtaining property by false pretenses are "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *State v. Cronin*, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980). Defendant contends that the State did not demonstrate that the caliper belonged to someone else

(namely Turnamics), and the jury did not have sufficient evidence of the first element. We disagree.

The evidence produced at trial was sufficient to establish that Turnamics owned the pawned caliper. Magdalene Black, operations manager at Turnamics, was familiar with the records and computer inventory system Turnamics utilizes for tracking equipment, including calipers, used to manufacture parts and products. She identified the caliper pawned at Westside because it was etched on the back with the name "Turnamics, Inc." and a serial number corresponding to Turnamics' inventory computer system. According to her inventory records, the serial number on the pawned caliper matched the number for the missing caliper. Magdalene Black specifically stated the caliper pawned at Westside was owned by Turnamics, was never released or entrusted to defendant, and was never sold. Subsequent evidence failed to reconcile how defendant, a delivery driver without access to production equipment, would have legitimate possession of the caliper. Defendant, in a prior written statement given to Welch, stated that after he was laid off from Turnamics he "found calipers in [his] winter coat pocket" but "[d]id not return them to Turnamics." Defendant felt Turnamics owed him for holiday pay, and "he could get money out of Turnamics by pawning [the caliper] and getting the cash." Because there is substantial evidence of each essential element of the offense charged and of defendant being the perpetrator of the offense, this assignment of error is overruled.

II. Sentencing as a Habitual Felon

[2] Under North Carolina law, a person who has three previous felony convictions may be sentenced as a habitual felon. N.C. Gen. Stat. §§ 14-7.1 to -7.6 (2001). Defendant challenges the trial court on three grounds. First, defendant argues the trial court erred in relying on a conviction obtained in 1982 as part of the basis for his conviction as a habitual felon because defendant did not have counsel during the 1982 trial. Second, defendant argues using a nineteen-year-old conviction as a predicate for habitual felon status constitutes cruel and unusual punishment. Third, defendant argues the sentence imposed is so disproportionate to the charge that it results in cruel and unusual punishment. Because we find no merit to defendant's arguments, we affirm.

Defendant first argues the use of the 1982 conviction should be suppressed because defendant was not represented by counsel at that trial. The United States Supreme Court has authorized collateral

attacks on earlier convictions during habitual felony sentencing where there was a complete denial of counsel in the trial that led to the earlier conviction. *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799 (1963). "[F]ailure to appoint counsel for an indigent defendant [is] a unique constitutional defect." *Custis v. United States*, 511 U.S. 485, 496, 128 L. Ed. 2d 517, 528 (1994). However, claims of ineffective assistance of counsel do not amount to a failure to appoint counsel and cannot be used to collaterally attack prior convictions. *Id.* The issue, therefore, is whether this attack is proper as a claim of failure to appoint counsel or improper as a claim of ineffective assistance of counsel.

The testimony at trial establishes that defendant was appointed counsel. The appointed counsel later withdrew, and defendant signed a waiver of counsel. Defendant claims that his waiver was not knowing or voluntary because defendant subsequently hired another attorney who failed to appear on the date he was sentenced. The essence of defendant's claim is not that the State failed to appoint counsel but, rather, that the counsel procured by defendant provided ineffective assistance by failing to appear. Because this does not equate to a failure to appoint counsel, it is ineffective as a collateral attack on the prior conviction. *Custis*, 511 U.S. at 496, 128 L. Ed. 2d. at 528.

Defendant next argues that relying on a nineteen-year-old conviction as a predicate for habitual felon status results in an unconstitutional infliction of cruel and unusual punishment. Defendant asserts that three felonies over a period of almost twenty years cannot fit under the plain meaning of the word "habitual." We disagree. North Carolina General Statute § 14-7.4 does not contain a provision disallowing the use of past felonies due to any time limitation based on conviction date. Other statutes for habitual convictions have provisions limiting the use of older convictions. *See, e.g.,* N.C. Gen. Stat. § 20-138.5 (having a provision precluding use of convictions seven years or older for habitual DWI convictions). "[T]he expression of one thing is the exclusion of another." *Appeal of Blue Bird Taxi Co.*, 237 N.C. 373, 376, 75 S.E.2d 156, 159 (1953). The General Assembly enacted provisions limiting the use of older convictions only in certain classes of habitual offense statutes. In the case of the Habitual Felon Act, the General Assembly did not include that provision, nor will we read one into the statute.

Finally, defendant argues that the sentence imposed is so disproportionate to the charge that it results in an unconstitutional infliction of cruel and unusual punishment. In support, defendant cites

*Solem v. Helm*, 463 U.S. 277, 77 L. Ed. 2d 637 (1983). Defendant is mistaken. "Only in exceedingly unusual non-capital cases will the sentences imposed be so grossly disproportionate as to violate the Eighth Amendment's proscription of cruel and unusual punishment." *State v. Ysaguire*, 309 N.C. 780, 786, 309 S.E.2d 436, 441 (1983). Further, our Supreme Court "reject[ed] outright the suggestion that our legislature is constitutionally prohibited from enhancing punishment for habitual offenders as violations of constitutional strictures dealing with . . . cruel and unusual punishment." *State v. Todd*, 313 N.C. 110, 117, 326 S.E.2d 249, 253 (1985) (citations omitted). This Court has recently held "[h]abitual felon laws have withstood scrutiny under the Eighth Amendment to the United States Constitution in our Supreme Court and in the United States Supreme Court." *State v. Cates*, 154 N.C. App. 737, 741, 573 S.E.2d 208, 210 (2002) (citing *Rummel v. Estelle*, 445 U.S. 263, 63 L. Ed. 2d 382 (1980); *State v. Todd*, 313 N.C. 110, 326 S.E.2d 249 (1985). The sentence imposed in the case *sub judice* under the habitual felon laws is not so "grossly disproportionate" so as to result in constitutional infirmity.

Defendant was not sentenced for 90 to 117 months in prison because he pawned a caliper obtained by false pretenses for approximately twenty dollars. Defendant was sentenced to that term because he committed multiple felonies over a span of almost twenty years and is a habitual felon.

Affirmed.

Judges McGEE and HUNTER concur.